HOPKINS *et al. v.* CHATHAM PHŒNIX NATIONAL BANK AND TRUST COMPANY, trustee, *et al.; et vice versa.*

Nos. 8371, 8403. JANUARY 14, 1932.

**140**

*R. D. Meader* and *Conyers & Gowen,* for Hopkins et al.

*Reese, Scarlett, Bennet & Highsmith,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) Various questions of law incidental to the main question in this case are presented for our consideration and are dealt with in the briefs of counsel. Most of the propositions to which our attention is called are well settled by previous adjudications of this court. We pretermit any discussion upon the issues arising from the contentions of the parties as to minor issues. The controlling question is whether there exists a right of redemption in the owner or other person interested in property which has been sold under a paving-assessment execution issued in pursuance of the Oklahoma or baby-bond plan for municipal improvements, who tenders to the purchaser at such sale, within one year thereafter, his purchase-money with a premium of ten per cent., as has long been provided in cases of sales held to collect State and county taxes. We have before us a case in which the purchaser at such a sale refused to accept the tender, although it is admitted that the property he seeks to retain is worth $5,000 and was purchased for $69.31. But though the disparity would seem to be so great as to mark the bargain as unconscionable, still a purchaser is entitled to his right if his demand is authorized by law. And there is much force in the argument that the legislature intended, by the language used in the amendment to the charter of the City of Brunswick with which we are dealing, and in the use of the statement that the purchaser at one of these sales held for the purpose of collecting paving assessments should receive an absolute title, to thereby enforce, certainly and without cavil, the payment of the assessments and the security of those who might purchase the bonds and thereby furnish the money with which the improvement was effected. However, the apparent warranty of an absolute title to the purchaser of the property sold to pay an assessment, like every statement in every legislative act,

is to be construed in pari materia with its associate words employed in the enactment. Section 37 of the act of August 11, 1920 (Ga. L. 1920, p. 785), declares that the purchaser at the assessment sale sh'all receive an "absolute title," it is true, but in the same connec· tion it provides that the sale shall be held in the same manner as sales to collect city taxes. If so, then the right of redemption would appertain to the sale to collect paving assessments as much as to tax sales of any other kind.

Section 879 of the Code of 1910 is as follows: "The time, place, and manner of the sale of property, both real and personal, for taxes due to municipal corporations in this State, shall be the same as that provided by law for sheriff's sales for State and county taxes; provided, such sale may be conducted by the marshal of the municipality and had before the door of the council chamber, or the usual place of meeting of the authorities having control of said municipality." This section was taken from the act of 1877 (Ga. L. 1877, p. 125), as amended by the act of 1901 (Ga. L. 1901, p. 23). In 1884 (Ga. L. 1884-5, p. 148), the General Assembly passed an act providing the terms upon which municipalities may issue executions for paving, etc. This is now embodied in § 869 of the same Code, which declares: "All municipal corporations have authority to enforce the collection of any amount due or to become due for paving streets or lanes, or for laying sewers and drains, or for cleaning or·repairing privy vaults, by execution to be issued by the treasurer against the persons or corporations by whom such debts may be due, which may be levied by the marshal on the real estate of the owners, and after proceedings as in cases of sales for city taxes, the same may be sold at public outcry. All sales made by such city under execution shall be subject to purchase by said corporation, and the right of redemption by the owner after sale." It will be noted that this law deals expressly with amounts "due or to become due for paving streets," and that the right of redemption by the owner is expressly reserved. But this is not all. By § 880 it is declared that "Whenever any land is so sold, the owner thereof shall have the privilege of redeeming said land thus sold, within one year, by paying the purchaser the amount paid by said pur- chaser for said land, with ten per cent. premium thereon, from the date of the purchase to the time of the payment." Furthermore, under § 1169, as amended by the act of 1924 (Ga. L. 1924, p. 48),

there is a sweeping and general provision for the redemption of property sold for taxes of any kind, whether State, county, city, school, or drainage assessments, and the right to redeem was extended to others besides the owner of the realty, if they had an interest in the property. Section 1169, as amended by the act of 1924, is as follows: "Where real estate has been sold under any State, city, county, school, or drainage assessment tax fi. fa., the same may be redeemed at any time within twelve months after the sale by the defendant in tax fi. fa., his guardian or trustee, heirs or personal representatives, or by any tenant in common, remainder-man, or other persons having an interest in such property, or by the holder of any mortgage, judgment, lien, or other interest in said property, or by any creditor of the defendant in fi. fa., by paying the purchaser the amount paid by said purchaser for said land, with ten per cent. premium thereon from the date of the purchase to the time of payment."

From the foregoing it seems to be clear that the plaintiff in the court below was entitled to redeem the realty which had been sold to satisfy the paving assessment involved in the present instance, and that the trial judge reached the correct conclusion in the entry of the judgment of which complaint is made. We have not omitted from our consideration the reference by counsel in their briefs to the decisions of this court in *McVey* v. *McWilliams*, 157 *Ga.* 220 (121 S. E. 641), and *Sigmon-Reinhardt Co.* v. *Atkins National Bank*, 163 *Ga.* 136 (135 S. E. 720), but the case at bar is distinguished from these cases by the fact that the rulings therein announced dealt only with the act of 1911 (Ga. L. 1911, p. 108) and its amendments, providing for a drainage system, the creation of drainage courts, etc., while the case at bar is one of paving assessments under the Oklahoma plan. The drainage law differs in so many respects from the provisions as to municipal paving to which we have referred that they are not applicable or in point in the adjudication of the case at bar. The attack upon the constitutionality of section 37 of the act of 1920, supra, is made in the cross-bill of exceptions; and the judgment upon the main bill of exceptions being affirmed, an adjudication thereof is unnecessary.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*