## 35354. CITIZENS & SOUTHERN NATIONAL BANK v. MARTIN.

UNDERCOFLER, Presiding Justice.

This case raises two questions involving Georgia's mortmain statute. Code § 113-107. The statute has been construed to apply only to charitable devises made during 90 days preceding death. *Hood v. First Nat. Bank of Columbus,* 219 Ga. 283 (133 SE2d 19) (1963). Here the testator made his will more than 90 days prior to death but republished it by codicil 67 days before death. The first question is whether the republication brings the will within the mortmain statute.

The estate has been appraised in excess of $700,000. The appellee, age 80, is the testator's widow and sole heir

at law. The will provides for disposition of certain personal effects to certain named beneficiaries by written memorandum not part of this record, life estates to the widow in the homeplace and in certain tangible personal property, and a six percent life annuity to the widow to be established under Item V of the will.[1] The remainders of the life estates and life annuity as well as the residue of the estate is devised to the Rosabel and James V. Martin Foundation which is intended to be a charitable trust. The second question is whether the charitable devises exceed more than one-third of the first $200,000 of the estate value contrary to Code § 113-107.

---

[1]"ITEM V: (1) In the event my wife, ROSABEL ALICE WOOD MARTIN, shall survive me by 30 days, I give, devise and bequeath to The Citizens and Southern National Bank as Trustee an amount or property selected from my estate having a value determined as follows:

"a. Determine the amount of the maximum 'Unified Credit Against Estate Tax' available to my estate at the time of my death as described in IRC Sec. 2010;

"b. Subtract therefrom the amount of such Unified Credit claimed by me during my life for taxable lifetime transfers made after December 31, 1976;

"c. Determine the maximum amount of taxable property which could be included in a taxable estate to determine a 'tentative tax' as described in IRC 2001 which shall be equal to the remaining allowable Unified Credit determined in paragraph V (b) above;

"d. Subtract from such amount the value for Federal Estate Tax purposes of any property includable in my taxable estate which shall not qualify for a marital deduction for property passing to my spouse or for exclusion from my taxable estate as a charitable bequest under any other item of my Will;

"e. Divide the remainder determined in V (d) above by the factor provided for determining the present value of a life estate for my said surviving spouse as described, Internal Revenue Regulations Sec. 20.2031-10;

"f. The result of the foregoing division shall be the value of this bequest. In the determination of this bequest

The trial court held the will was effective as of the date of its republication by codicil and came within the provisions of Code § 113-107. We agree. The trial court held further that the charitable devises under the pleadings exceeded one-third of the first $200,000 of the estate value, were void, and declared an intestacy as to this $200,000. We disagree.

---

any property distributed in kind in satisfaction thereof shall be credited to the value of the bequest at its fair market value on the date or dates of distribution. My Executor shall determine in its sole discretion the specific properties to be allocated to this bequest, except that it shall not use any property or interest in property which would not qualify as property to be held by a Charitable Remainder Annuity Trust as described in IRC 664 (d).

"(2) The Trustee shall hold and administer the trust property for the following uses and purposes:

"a. During the lifetime of my wife, ROSABEL ALICE WOOD MARTIN, the Trustee shall invest and reinvest the property and, beginning with the date of my death, pay to my wife during each taxable year an amount equal to six percent (6%) of the initial net fair market value of the assets passing into this trust as finally determined for Federal tax purposes, in quarterly or more frequent installments, accumulating any excess income as principal. Notwithstanding the foregoing, the Trustee may defer all or any part of the payments to my wife until the end of the taxable year of the trust in which occurs the complete funding of this trust.

"b. Upon the death of my wife, the Trustee shall distribute all of the property remaining in the trust (other than any amount due my wife) to the Trustee of the Charitable Trust created under Item VI below to be held and administered under the terms and for the uses and purposes of said trust as if it had been an original part thereof.

"c. In the event the Trustee incorrectly determines the initial net fair market value of the trust assets as finally determined for Federal tax purposes, the Trustee shall within a reasonable time after the final determination of

1. There is no dispute that the codicil was a republication of the will. The codicil identifies the will by date and declares, "Except as herein amended, my Will shall remain in full force and effect, and, so I hereby remake, redeclare and republish my Will, together with these amendments, as my Last Will and Testament." Appellant argues that the codicil does not increase or diminish the charitable devise but merely broadens the trustee's discretion, therefore the charitable devise should be deemed to have been made as of the date of the will rather than the date of the codicil. It is unnecessary to reach the question as to whether the codicil altered the charitable devise in the will. It is our opinion that the Georgia cases establish that a will republished by proper codicil speaks from the date of the codicil, absent a

---

the correct value, either pay to or receive from my spouse the difference between the amount which should have been used and the amount which was actually paid.

"(3) Notwithstanding anything herein to the contrary, the Trustee shall prorate, on a daily basis, the amount payable to my wife for a short first taxable year or for the taxable year of her death.

"(4) No additional contributions shall be made to this trust at any time by any person whatsoever.

"(5) While this trust is treated as a trust described under Section 4947 (a) (2) the Trustee shall not engage in any act of self-dealing as defined in Section 4941 (d) or make any taxable expenditures as defined in Section 4945 (d).

"(6) This trust is intended to qualify as a charitable remainder annuity trust, as described in Section 664 (d) (1), and shall be administered and construed accordingly. In addition, the Trustee shall be authorized to amend the provisions of this trust solely for the purpose of qualifying the trust as a charitable remainder annuity trust, by a written instrument filed in the court of competent jurisdiction.

"(7) All references in this Item V of my Will to various code sections are to sections of the Internal Revenue Code of 1954 presently in force or as the same may from time to time be amended or reformed."

manifest intent to the contrary. "Prima facie, the execution of a codicil to a will of lands, so executed itself as to be capable within the statute of passing lands, is a republication of the original will, and the effect of such republication is, to make the will operate in the same manner as if executed at the time of such republication, unless a special intent is manifest in the codicil to restrain such operation, and give it a less extensive effect. In other words, it brings down the will to the date of the codicil, making the will speak as if of that date. That is, both will and codicil should be taken as one entire instrument." *Jones v. Shewmaker,* 35 Ga. 151 (2) (1866); *Burge v. Hamilton,* 72 Ga. 568, 626 (1884). See *Foster v. Tanner,* 221 Ga. 402, 405 (4) (144 SE2d 775) (1965). Accordingly, the will and codicil here come within the provisions of Code § 113-107.

2. Whether the charitable devises exceed one-third of the first $200,000 of the estate cannot be adjudicated from the record. No evidence has been introduced yet. This is a judgment on the pleadings. However, the will and codicil which are attached as exhibits do not show that the charitable devises violate Code § 113-107. On the contrary, it may well be that they are less than one-third of the first $200,000 of the estate. It is apparent that the testator intended to take full advantage of the "Unified Credit for Estate Taxes." He died on October 8, 1978. The maximum credit for that year was $34,000. This exempts from estate tax property of a value of $134,000. That is more than two-thirds of the first $200,000 and obviously if the testator has devised to his widow and others property valued at $134,000, the gift to charity is less than one-third of the first $200,000 and does not violate Code § 113-107. The provisions of Item V may accomplish that by establishing a life annuity with a present value under I.R.S. tables which when added to other taxable gifts equals exactly $134,000. Whether or not it has done so depends upon evidence which is not before us. However, we find no requirement that Carlisle's annuity tables must be used to establish the present value of the widow's annuity rather than the I. R. S. annuity tables specified by the testator. The testator made a gift to his wife and it is his prerogative to direct that its amount and present

value shall be determined under established I. R. S. annuity tables.

*Judgment reversed. All the Justices concur, except Hill, J. who concurs in the judgment only. Nichols, C. J., disqualified.*

ARGUED SEPTEMBER 19, 1979 — DECIDED OCTOBER 23, 1979.

*Westmoreland, Hall, McGee, Warner & Oxford, C. Wilbur Warner, John L. Westmoreland, Jr.,* for appellant. *J. Ralph McClelland, Jr.,* for appellee.